[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR ATTORNEY'S FEES AS PUNITIVE DAMAGES
On July 25, 2001, the jury in this case returned verdicts for the plaintiff, Label Systems Corporation ("Label Systems"), against two of its former employees, defendants Samad Aghamohammadi (a "Mr. Agha") and Pamela Markham ("Ms. Markham"), a married couple, for conversion of insurance proceeds. By its verdicts, the jury found that in a five-month CT Page 9094 period in early 1993, the defendants wrongfully detained, and thereby converted, $1095.01 in insurance proceeds which they had received from the Allstate Insurance Company to repair a car leased for them by the plaintiff which had been damaged in an accident. Instead of using the money to repair the damaged car, or turning it over to the plaintiff so it could make the repairs, the defendants deposited the money in their personal bank account, where it remained until the plaintiff learned of its receipt and demanded its return.
As a result of the defendants' tortious conduct, the jury awarded the plaintiff $50 in compensatory damages. Under the Court's instructions, that sum represented five months' interest on the converted money at the rate of 10% per annum. In fact, those were the only compensatory damages which the plaintiff was awarded in this hard-fought case, for the jury simultaneously rejected its only remaining claim[1] of conversion of inventory.
On the plaintiff's conversion-of-insurance-proceeds claim, however, the jury also determined that the plaintiff was entitled to recover punitive damages from both defendants because they "not only participated in the conversion of insurance proceeds but did so out of hatred or ill will for the plaintiff, or with malice, or wantonly," as the Court explained those terms.[2] Jury Instructions, p. 31. The parties agreed, and thus the jury was instructed, that the measure of such damages, if the jury saw fit to award them, would later be determined by the Court.
The case is now before the Court on the plaintiff's post-trial motions for attorney's fees as punitive damages on its claims for conversion of insurance proceeds. The plaintiff fled its initial motion on September 10, 2001. In that motion, the plaintiff acknowledged that trial courts have broad discretion whether or not to award punitive damages. Even so, it claims that when such damages are awarded, their measure is well-established as follows: legal expenses, including attorney's fees, less taxable costs. On that basis, the plaintiff submitted detailed records of all of its legal expenses in this case through the date of its initial motion. As documented in those records, the plaintiff claimed a total of $252,481.25 in attorney's fees as punitive damages. It also listed other case-related costs in the total amount of $12,246.19, but did not expressly claim them as punitive damages.
At the initial hearing on the parties' post-trial motions, the Court suggested to plaintiff's counsel that he redraft his motion to eliminate from his request those attorney's fees which his client concededly had not incurred in preparing and presenting its conversion-of-insurance-proceeds claim. The plaintiff complied with this request in part by filing a supplemental motion for punitive damages from CT Page 9095 which it subtracted the undifferentiated sum of $44,934.66 in attorney's fees and costs from the aggregate total of those items as reported on the detailed list of fees and costs submitted in support of his initial motion, to wit: $264,727.38. This deduction, which reduced the plaintiff's total request for punitive damages to $219,792.92 less taxable costs awarded by the Court, was supported by a memorandum of law and a set of proposed findings of fact and conclusions of law. The defendants responded to the plaintiff's supplemental motion and supporting materials with their own responses and objections to those submissions dated October 24, 2001.
Later, the plaintiff filed two further motions for attorney's fees, seeking reimbursement as punitive damages for additional expenses it had incurred in pursuing its post-trial motions on the conversion-of-insurance-proceeds claim. The additional sums requested totaled $3,912.50.
The plaintiff's essential argument in support of its substantial request for punitive damages is that, since all of the claims presented at trial were factually interrelated, evidence developed and presented on any one of them was relevant to each of them, and thus all expenses incurred in developing and presenting that evidence are logically attributable to each of them as well. Hence, with the exception of the deductions made in the plaintiff's supplemental motion, it argued that all of its legal expenses in this case should be recoverable as punitive damages on its conversion-of-insurance-proceeds claim.
The defendants object strongly to the plaintiff's argument for several reasons. First, they claim that there is no basis in the evidence for any finding of liability on the plaintiff's conversion-of-insurance-proceeds claim. The Court rejects that argument for all the reasons it previously stated on the record in denying identical claims made by the defendants in their motions for directed verdict and for judgment notwithstanding the verdict.
The defendants' second reason for opposing the plaintiff's motion is that, in light of the minuscule size of the plaintiff's verdict — indeed, of the obvious insubstantiality of its claim for damages from the very outset of this case — the Court should exercise its discretion to deny the plaintiff any punitive damages for its extravagant, unjustified expenditures before and during trial. The plaintiff, they claim, should not be rewarded for pressing a de minimis claim for so many long and arduous years.
The Court fundamentally disagrees with this second argument, for it does not regard the plaintiff's claim as meaningless or frivolous. CT Page 9096 Intrinsically, despite its small size, the claim has obvious merit. In proving the claim, the plaintiff clearly established that the defendants knowingly withheld money from it, which it was entitled to receive and make use of as soon as it was received. They did so, moreover, under circumstances suggesting both malice, that is "some unjustifiable motive or intent," and wantonness, "aware[ness] . . . that his conduct would naturally or probably harm the plaintiff." Jury Instructions, p. 27. Accordingly, the jury properly found that punitive damages should be awarded.
The defendants' third argument, however, is much more persuasive than its first or second. That argument, to put it simply, is that if punitive damages are called for in this case, they must be severely limited in view of the size of the plaintiff's recovery and the relative insignificance of its conversion-of-insurance-proceeds claim in the context of this case. An award of hundreds, or even tens of thousands of dollars in attorney's fees and costs on a $50 claim cannot be justified under any circumstances, the defendants argue. Here, especially, it must be rejected because the plaintiff's conversion-of-insurance-proceeds claim was but a sideshow in a much bigger case where the plaintiff's one truly significant claim — alleged conversion of its inventory — was flatly rejected.
The latter argument is absolutely correct, for the central thrust of the plaintiff's case was its claim that Mr. Agha, with the knowing assistance and cooperation of Ms. Markham, had systematically looted Label Systems of large quantities of inventory — finished products and/or raw materials — which had disappeared under suspicious circumstances from the area of the plant that he controlled and supervised. Portraying Mr. Agha as a disgruntled employee who wanted to advance in the company but was not allowed to by Mr. Felis, the plaintiff claimed he had a motive to get back at Mr. Felis by stealing or destroying inventory. It claimed further that he was a dishonest, disloyal employee, who not only lied about the missing inventory but had a financial motive to steal it: to supply Mecca Shipping Trading ("Mecca"), a competitor company he had formed with another disgruntled ex-employee of the plaintiff, one Henry Behre. Mr. Agha, claimed the plaintiff, secretly ran Mecca from his Label Systems office, using Label Systems equipment and facilities without authorization to conduct the business. That business, it claimed, involved the selling of stolen Label Systems inventory overseas.
Mr. Markham, for her part, was claimed by the plaintiff to be aware of her husband's secret business, to have cooperated with him in having work for that business performed at the office, and to have rendered covert assistance to her husband's partner, Mr. Behre, in his ongoing litigation CT Page 9097 against Label Systems.
The plaintiff's case against the defendants was circumstantial. Its success depended upon establishing disappearances of its inventory — a difficult proof because of Label Systems' sloppy inventory control procedures — and linking such alleged disappearances with the defendants by establishing their opportunity to steal or destroy inventory and their vengeful or dishonest motives for doing so. It was hardly surprising that, despite the best efforts of plaintiff's able counsel to put the pieces together, the jury rejected the plaintiff's claim.
In this context, the true role of the plaintiff's claim of conversion of insurance proceeds was two-fold. First, it was one of many isolated acts of disloyalty or dishonesty with which the plaintiff attempted to paint the defendants as disloyal, dishonest employees who abused positions of trust to line their own pockets at their employer's expense. Second, on the defendants' counterclaims for wrongful termination, the conversion-of-insurance-proceeds claim was asserted by the plaintiff as a possible basis for limiting the plaintiff's liability to pay damages if wrongful terminations were proved. The defendants' conversion of the insurance proceeds, though not discovered by the plaintiff until after the defendants were terminated, might have led to the defendants' immediate dismissal as soon as it came to light.
Against this background, it can truly be said that evidence of conversion of insurance proceeds was relevant both to the plaintiff's principal claim of theft of inventory and to the defendants' counterclaims for wrongful termination. Hence, had punitive damages been awarded onthose claims, the attorney's fees awardable as punitive damages would properly have included all attorney's fees reasonably incurred in preparing and presenting the conversion-of-insurance-proceeds claim.
Here, however, punitive damages were awarded for conversion of insurance proceeds, not conversion of inventory or wrongful termination. The question thus presented is whether the plaintiff's substantial and entirely understandable expenditures of time and money on those other, more substantial claims contributed at all to the plaintiff's preparation or presentation of its conversion-of-insurance-proceeds claim. For the following reasons, the Court concludes that they did not, and thus that expenses incurred in preparing and presenting those claims cannot be awarded as punitive damages for conversion of insurance proceeds.
The conversion-of-insurance-proceeds claim, though arguably evidencing the defendants' dishonesty and disloyalty to Label Systems, and thus suggesting their potential willingness or disposition to appropriate its CT Page 9098 property, had nothing to do with the plaintiff's loss of inventory or the defendants' alleged operation of Mecca from inside the company. Instead, it was an isolated act of dishonesty committed in an entirely different sphere of the defendants' work activity.
Proof of the defendants' conduct in relation to the insurance proceeds, moreover, required no proof of theft of inventory, mismanagement of the shipping department at Label Systems, leaking of confidential information to persons in litigation with Label Systems, or the like. Instead, it involved a simple proof that the defendants had the use of a vehicle through Label Systems, that after having an accident with the vehicle they filed a claim for insurance to repair it, that upon receiving the payment from the insurance company they deposited it in their own bank account instead of giving it to Label Systems or using it to repair the vehicle, and that they detained the money for a period of five months before Label Systems learned they had received it and demanded its surrender. Simply, none of the plaintiff's evidence about its problems with missing inventory or other aspects of the defendants' job performances which bore on the other pending claims, was in any way relevant to its proof of the conversion-of-insurance-proceeds claim.
When a plaintiff is awarded attorney's fees on less than all of his claims at trial, either because he did not prevail on all of his claims or because some claims, though successfully prosecuted, do not entitle him to recover attorney's fees, his recovery of attorney's fees must be limited to those fees reasonably incurred in preparing and presenting claims for which fees were awarded. Fees reasonably incurred while working directly on a claim for which punitive damages are awarded are obviously recoverable. Similarly, fees incurred when working on matters that affect many claims, at least one of which is subject to an award of attorney's fees, are properly recoverable if and to the extent that they were reasonably related to the covered claim. Where, however, any fees incurred related only to claims on which the plaintiff did not prevail or for which no attorney's fees were awarded must be excluded from the award of attorney's fees on a covered claim.
Here, the plaintiff has failed to provide the Court with a useful breakdown of the hours its counsel spent working solely or principally upon the conversion-of-insurance-proceeds claim or the specific costs it incurred in preparing and presenting that claim after commencing this action. Even so, it has given the Court detailed records which document the hours counsel spent working on this case before and during trial and the associated costs he incurred in that time frame, plus affidavits from counsel detailing the time he has spent after trial to preserve the jury's verdict on this claim and to recover punitive damages thereon. Based upon those records, whose accuracy and completeness the defendants CT Page 9099 do not dispute, the Court has decided, in the exercise of its discretion, to award the plaintiff attorney's fees as punitive damages for that number of hours, billed at the reasonable rates indicated by its counsel, which are fairly attributable to his preparation and presentation of the plaintiff's conversion-of-insurance-proceeds claim. The Court has figured those fees by multiplying counsel's total billings for attorney's fees in each time period by the percentage of his total effort in that time frame that, as a matter of reasonable probability, was devoted to the plaintiff's conversion-of-insurance-proceeds claim.
Before this case went to trial, the Court would estimate that plaintiff's counsel spent no more than 5% of his total time and energy developing his client's conversion-of-insurance-proceeds claim. As the case was then postured, that claim was merely one of several sub-claims in a count generally alleging breach of fiduciary duty, and that count was merely one of four separate counts, each seeking damages from the defendants on a different theory of liability. The full case, moreover, included not only the plaintiff's claims, but those presented in the defendants' eight-count counterclaim and eight-count third-party claim against Label Systems' president, Kenneth Felis ("Mr. Felis") In that context, the plaintiff's conversion-of-insurance-proceeds claim demanded relatively little of its lawyer's time and attention.
Once trial began, and several of the parties' other claims began to fall by the wayside, the conversion-of-insurance-proceeds claim surely drew more of counsel's attention than it had before trial, but certainly never more than 10% of his total time and effort. Indeed, it was not until the post-trial filing and argument of the instant motions and others concerning the viability of the plaintiff's conversion-of-insurance-proceeds claim that counsel had any strong reason to focus exclusively on that claim.
The fees so awarded are as follows:
 For work before trial, awarded as 5% of plaintiff's documented attorney's fees on or before June 30, 2001 ($200,356.25) : $10,178.13
 For work at trial, awarded as 10% of plaintiff's documented attorney's fees from July 1, 2001 until the end of trial ($52,125.00) : $5,212.50
For work after trial, awarded as 100% of plaintiff' attorney's CT Page 9100 fees defending its verdict for conversion of insurance proceeds and efforts to recover punitive damages ($3,912.50) : $3,912.50
 TOTAL ATTORNEY'S FEES AWARDED AS PUNITIVE DAMAGES : $19,303.13
In addition to attorney's fees, the plaintiff is entitled to his costs attributable to the conversion-of-insurance-proceeds claim less taxable costs. Here again, the plaintiff has not furnished the Court with a useful breakdown of the costs it incurred on a claim-by-claim basis in this action after paying the initial court entry fee of $200 and the sheriff fee of $283, both of which were awarded to the plaintiff as part of this Court's granting of its Revised Motion For Award of Bill of Costs dated October 23, 2001. In granting that motion, the Court awarded a total of $939.20 to the plaintiff as taxable costs, including $456.20 in addition to the court entry fee and sheriff fee.
If, then, the plaintiff's entire request for costs as punitive damages, less court entry fee and sheriff fee, is made subject to the same calculation by percentages as the Court employed to calculate the amount of attorney's fees awardable as punitive damages, additional punitive damages to which the plaintiff is entitled can be figured as the total of those percentages of costs less taxable costs of $456.20, as follows:
 For costs other than court entry fee and sheriff fee, awarded as 5% of plaintiff's total documented costs on or before June 30, 2001 ($11,744.56 — $483 = $11,261.56) : $563.08
 For costs, awarded as 10% of plaintiff's total documented costs from July 1, 2001 until the end of trial ($501.63) : $50.16
 SUBTOTAL : $613.24
 Taxable costs other than court entry fee and sheriff fee ($939.20 — $483 = $456.20) : -$456.20
 NET AWARD OF COSTS LESSCT Page 9101 TAXABLE COSTS AS PUNITIVE DAMAGES : $157.04
 TOTAL ATTORNEY'S FEES AWARDED : $19,303.13
AS PUNITIVE DAMAGES
 TOTAL AWARD OF PUNITIVE DAMAGES : $19,460.17
IT IS SO ORDERED this 12th day of July, 2002.
MICHAEL R. SHELDON, J.